Opinion issued January 29, 2009
 















     






In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00785-CR
NO. 01-07-00786-CR




NATHAN NORWOOD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause Nos. 12934 and 13422




 
 
MEMORANDUM OPINION
          A jury convicted appellant, Nathan Norwood, of unlawful possession with
intent to deliver a controlled substance, namely cocaine, in an amount of 400 grams
or more and bail jumping/failure to appear. See Tex. Health & Safety Code Ann.
§ 481.112 (Vernon 2003) and Tex. Pen. Code Ann. § 38.10 (Vernon 2003). The
cases were consolidated for trial. The trial court assessed punishment at 15 years in
prison for unlawful possession with intent to deliver a controlled substance and eight
years in prison for bail jumping/failure to appear. In four points of error, appellant
challenges the legal and factual sufficiency of the evidence supporting his
convictions. We affirm.
Background
          On December 10, 2003, during the course of a traffic stop of a car for failure
to properly display a license plate, Texas Department of Public Safety Trooper Jason
Taylor noticed that the driver of the car and his two passengers were behaving
suspiciously, and Taylor asked for permission to search the car. Appellant’s twin
brother, who was the driver, and appellant both gave their consent. Trooper Taylor
and Cleveland Police Officer Kevin Cook searched the car (the “Grand Am”) and
found three bundles of cocaine and digital scales within the rear door panels of the
car. The trooper and the officer also found a pair of pliers in appellant’s pocket.
While the trooper and the officer were looking into the door panels, appellant
attempted to flee. After the trooper and the officer subdued appellant, they placed him
and his brother in the back of Trooper Taylor’s car. A microphone mounted in the
police car captured appellant and his brother talking to each other. One of them said,
“Can’t you see they got us, man?” The other said, “We still probably would have got
caught, but you still done [sic] the wrong thing.” The State’s drug interdiction expert
testified that the amount of cocaine found, 402.29 grams, was “definitely a
trafficker’s volume of cocaine” and not for personal use.
          In the second case, appellant was convicted for failing to appear as ordered in
court in Chambers County on February 2, 2005. Appellant had previously signed an
order of setting, which informed him of his obligation to appear. The instanter bond
under which appellant was released ordered appellant to appear in Orange County
rather than Chambers County. The Chambers County bailiff testified that he saw
appellant in the Chambers County courthouse but that appellant “disappeared”
without being excused by the judge.
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict and determining whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Cruz v. State, 238 S.W.3d 381, 386 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d)
(citing King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)). The trier of fact
is the sole judge of the weight and credibility of the evidence. Margraves v. State, 34
S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency
review, we may not reevaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder. Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999). We must resolve any inconsistencies in the evidence in
favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).          When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. Brown v. State, 212 S.W.3d 851, 859 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d) (citing Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999)).
We will set the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Brown, 212 S.W.3d at 859 (citing Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Under the first prong of Johnson, we
cannot conclude that a conviction is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had we
been on the jury. Brown, 212 S.W. 3d at 859 (citing Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006)). Under the second prong of Johnson, we cannot declare
that a conflict in the evidence justifies a new trial simply because we disagree with
the jury’s resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Id. In conducting a
factual sufficiency review, we must also discuss the evidence that, according to the
appellant, most undermines the jury’s verdict. Brown, 212 S.W.3d at 859 (citing Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003)).
          We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King, 29 S.W.3d at 562. The fact-finder alone determines what weight to
place on contradictory testimonial evidence because that determination depends on
the fact-finder’s evaluation of credibility and demeanor. Cain v. State, 958 S.W.2d
404, 408-09 (Tex. Crim. App. 1997). As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n. 5. 
Possession of a Controlled Substance
 Legal Sufficiency
          In his first point of error, appellant contends that the evidence is legally
insufficient to support his conviction for possession with intent to deliver cocaine. A
person commits the offense of possession with intent to deliver a controlled substance
if he knowingly possesses with intent to deliver a controlled substance listed in
Penalty Group one, which includes cocaine. See Tex. Health & Safety Code Ann.
§§ 481.112(a) (Vernon 2003); 481.102(3)(D) (Vernon Supp. 2008) (listing cocaine
in Penalty Group 1). In a possession with intent to deliver case, the State must prove
that the defendant (1) exercised care, custody, control, or management over the
controlled substance; (2) intended to deliver the controlled substance to another; and
(3) knew that the substance in his possession was a controlled substance. Id. §§
481.002(38), 481.112(a) (Vernon 2003 & Supp. 2008); Nhem v. State, 129 S.W.3d
696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995)).
            When a defendant is not in exclusive possession of the place where the
controlled substance is found, the State must prove additional independent facts and
circumstances that affirmatively link the defendant to the contraband. See Roberson
v. State, 80 S.W.3d 730, 734-35 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).
An affirmative link generates a reasonable inference that the defendant knew of the
contraband’s existence and exercised control over it. Id. at 735; Johnson v. State, 658
S.W.2d 623, 627 (Tex. Crim. App. 1983), overruled on other grounds, Woods v.
State, 956 S.W.2d 33 (Tex. Crim. App. 1997). Courts have identified a
non-exhaustive list of factors that may help to show an affirmative link to the
controlled substance. Some relevant factors that may affirmatively link an accused to
contraband include: (1) the defendant’s presence when a search is conducted; (2)
whether the contraband was in plain view; (3) the defendant’s proximity to and the
accessibility of the narcotic; (4) whether the defendant was under the influence of
narcotics when arrested; (5) whether the defendant possessed other contraband or
narcotics when arrested; (6) whether the defendant made incriminating statements
when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant
made furtive gestures; (9) whether there was an odor of contraband; (10) whether
other contraband or drug paraphernalia were present; (11) whether the defendant
owned or had the right to possess the place where the drugs were found; (12) whether
the place where the drugs were found was enclosed; (13) whether the defendant was
found with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt. See Olivarez v. State, 171 S.W.3d 283, 291 (Tex.
App.—Houston [14th Dist.] 2005, no pet.). It is not the number of linking factors
present that is important, but rather the “logical force” that they create to prove that
the defendant committed the crime. Roberson, 80 S.W.3d at 735. Each case is
examined on its own facts, and a factor that contributes to the sufficiency of the
evidence in one case may be of little or no value in a different case. Id. at 736. 
          Here, appellant was present when the search was executed; appellant was close
to and had access to the cocaine; appellant made incriminating statements during the
arrest; appellant attempted to flee; other drug paraphernalia was present with the
cocaine; the trooper and officer found a significant amount of contraband; and the
cocaine was found in an enclosed place. See Olivarez, 171 S.W.3d at 291); Roberson,
80 S.W.3d at 740; State v. Derrow, 981 S.W.2d 776, 779 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d).
          Specifically, appellant attempted to flee when the officers began to look within
the rear door panels of the Grand Am. A microphone mounted in Trooper Taylor’s
patrol car recorded appellant and his brother making statements to each other
indicating that both men knew that there was cocaine in the Grand Am. Appellant had
a pair of pliers in his pocket. The officers discovered a digital scale hidden in the right
rear door panel with the cocaine. The cocaine was split into three bundles, which
Trooper Taylor testified was significant because, in his opinion, it meant that “each
individual [in the Grand Am] had their [sic] own cut” of the cocaine. The State’s drug
interdiction expert testified that the amount of cocaine found in the car was
“definitely a trafficker’s volume of cocaine” and not for personal use. 
          Looking at this evidence in the light most favorable to the verdict, there are
sufficient facts and circumstances linking appellant to the cocaine found in the car.
Accordingly, we hold that the evidence is legally sufficient to support appellant’s
conviction. 
          We overrule appellant’s first point of error.
Factual Sufficiency
          In his second point of error, appellant argues that the evidence is factually
insufficient to support his conviction for possession with intent to deliver because
numerous linking factors that were present in other cases are absent in this case.
Appellant points out that the cocaine was not in plain view; he did not have drugs,
weapons, or a large amount of cash on his person; he did not appear to be under the
influence of any drugs; he did not make any furtive gestures; there was no odor of
drugs in the vehicle; he did not own the vehicle; and there was no evidence of his
fingerprints on the cocaine packaging. As we noted in our discussion of legal
sufficiency, the linking-factor analysis is extremely case-specific—the number of
factors that are present, and even which factors are used, is less important than the
“logical force” those factors create to prove that the defendant committed the crime.
See Roberson, 80 S.W.3d at 735. The simple absence of particular factors does not
indicate an absence of evidence.
          Appellant contends that the factors that are present do not provide sufficient
evidence to sustain his conviction. In support, appellant relies on three cases in which
a conviction for drug possession was reversed despite an attempt by the defendant to
flee. See Herndon v. State, 787 S.W.2d 408 (Tex. Crim. App. 1990); Denbow v. State,
837 S.W.2d 235 (Tex. App.—Dallas 1992, pet. ref’d); Jackson v. State, 698 S.W.2d
764 (Tex. App.—Beaumont 1985, no pet.). He also relies on three cases in which a
conviction was reversed despite a large amount of drugs being found. See Jenkins v.
State, 76 S.W.3d 709 (Tex. App.—Corpus Christi 2002, pet. ref’d); Dixon v. State,
918 S.W.2d 678 (Tex. App.—Beaumont 1996, no pet.); Moreno v. State, 821 S.W.2d
344 (Tex. App.—Waco 1991, pet. ref’d). However, none of these cases is applicable.
Here, the logical force of the combination of appellant’s attempt to flee, his recorded
statements indicating his knowledge of the presence of the contraband, and the large
amount of narcotics hidden in an enclosed space to which the defendant was in
possession of a means of access is overwhelming.
          Appellant further questions the probative value of some of the linking factors.
Pointing out that a dead car battery was found in the Grand Am, appellant argues on
appeal that the pliers found on his person could have been used to install a new car
battery. Appellant also argues that his attempt to flee the scene could be attributed as
easily to panic as to culpability. However, a decision is not manifestly unjust merely
because the jury resolved conflicting views of the evidence in favor of the State. See
Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997). 
          Finally, in his reply brief, appellant contends that the police videotape
containing incriminating statements made by appellant and his brother to each other
lacks probative value because there is no evidence that appellant spoke. While it is
true that, because of the angle from which the video was shot, the speakers are not
visible, two different voices are clearly heard, and both make self-incriminating
statements.


 Trooper Taylor testified that, at the time the statements were made,
appellant and his brother were alone in the patrol car.
          Viewing the relevant evidence in a neutral light, favoring neither the State nor
appellant, and with appropriate deference to the jury’s credibility determinations, we
conclude that the evidence supporting the verdict is not too weak to support the jury’s
finding of guilt beyond a reasonable doubt and that the weight of the evidence
contrary to the verdict is not so strong that the State could not have met its burden of
proof. See Pena v. State, 251 S.W.3d 601, 609 (Tex. App.—Houston [1st Dist.] 2007,
pet. ref’d). We overrule appellant’s second point of error.
Bail Jumping
          In his third and fourth points of error, appellant challenges the legal and factual
sufficiency of the evidence supporting his conviction for bail jumping. A person
commits the offense of bail jumping and failure to appear when he is lawfully
released from custody on condition that he subsequently appear and intentionally or
knowingly fails to appear in accordance with the terms of his release. See Tex. Pen.
Code Ann. § 38.10(a) (Vernon 2003). It is a defense to prosecution that the actor had
a reasonable excuse for his failure to appear. See Tex. Pen. Code Ann. § 38.10(c)
(Vernon 2003). Appellant failed to appear for docket call in Chambers County on
February 2, 2005. Appellant complains that there was insufficient evidence to sustain
the conviction because the bond he was given upon release ordered him to appear in
Orange County, not Chambers County.
          Generally, an instanter bond gives proper notice and, in the absence of
evidence of a reasonable excuse, is sufficient to prove a defendant intentionally and
knowingly failed to appear in accordance with the terms of his release. See Euziere
v. State, 648 S.W.2d 700, 702 (Tex. Crim. App. 1983). Proof that the defendant was
free pursuant to an instanter bond constitutes a prima facie showing that the defendant
had notice of the proceeding at which he failed to appear. See Richardson v. State,
699 S.W.2d 235, 238 (Tex. App.—Austin 1985, pet. ref’d). This prima facie showing
satisfies the State’s burden of proving a culpable mental state in the absence of any
evidence to the contrary. Id. However, when, as in the instant case, there is evidence
that the defendant did not have proper notice of the proceeding in question, the State
must do more than prove the terms of the bond in order to meet its burden of proving
an intentional or knowing failure to appear. Id. In such cases, the State must offer
evidence that the defendant had actual notice or engaged in a course of conduct
designed to prevent him from receiving notice. Id.
          Appellant cites Fish v. State, where the Dallas Court of Appeals sustained a
sufficiency challenge to a bail jumping conviction because the bond did not contain
the name of the court in which the defendant was to appear. 734 S.W.2d 741 (Tex.
App.—Dallas 1987, pet. ref’d). The Dallas court held that the bond itself, which
contained blanks where the name of the court should have been, was evidence
indicating that the appellant did not have actual notice that he was to appear before
the 354th Judicial District Court of Hunt County. Id. at 742-44. Because there was no
other evidence indicating that the appellant had actual notice of the hearing, the court
concluded that no rational trier of fact could have found that the appellant
intentionally and knowingly failed to appear in accordance with the terms of his
release. Id.
          Fish is distinguishable, however, because here the State presented evidence
apart from the bond that appellant had actual notice of the proceeding at which he
was to appear. First, appellant signed an order of setting that properly instructed him
to appear in Chambers County on February 2, 2005.


 Second, the bailiff of the
Chambers County courthouse testified that appellant “showed up” in the Chambers
County court on the date in question but “disappeared” without being excused by the
judge. The bailiff further testified that other defendants who shared appellant’s bail
bondsman had been arrested that day. The State argued at trial that appellant fled
because he was afraid of being taken into custody as well. More on point is Bell v.
State, 63 S.W.3d 529 (Tex. App.—Texarkana 2001, pet. ref’d). In Bell, the appellant
was released under a bond that was silent as to the location, date, and time of his
appearance in court. Id. at 531. Nevertheless, the Texarkana Court of Appeals
affirmed his bail jumping conviction, noting that the appellant signed an “Appearance
and Announcement Form” containing the pertinent information and that two
witnesses testified that the appellant knew of his court appearance. Id. at 532-33.
          Appellant contends, as did the appellant in Bell, that we may only look to the
language of the instanter bond in ascertaining whether he had notice of his
appearance date. Because the language of the bond ordered appellant to appear in
Orange County, appellant argues, appellant could only have been justifiably found
guilty of bail jumping for failing to appear in Orange County. We disagree with
appellant and agree with the reasoning of the Bell court, which stated:
To so hold would mean a defendant would never have notice of appearance
when the instanter bond is blank, even if the defendant obtained subsequent
knowledge, because that knowledge would not have been received pursuant to
the terms of release. The caselaw clearly supports that when the instanter bond
does not show prima facie evidence that the defendant had actual notice, the
state must offer evidence of actual notice [citations omitted]. The instanter
bond is not the only evidence of a defendant’s actual notice. 
 
Id. at 532. 
          Irrespective of the language of the bond, the trial court ordered appellant to
appear in court in Chambers County, and appellant acknowledged the court’s order
by signing it. The State thus adduced evidence that appellant had notice of his
obligation to appear in Chambers County. Appellant, on the other hand, produced no
evidence that he even read, let alone relied on, the erroneous language on the
instanter bond. We therefore hold that the evidence, viewed in a light most favorable
to the verdict, supports the jury’s finding that appellant intentionally or knowingly
failed to appear and is thus legally sufficient to support appellant’s conviction. See
King, 29 S.W.3d at 562. We further conclude that the evidence supporting the verdict
is not too weak to support the jury’s finding of guilt beyond a reasonable doubt and
that the weight of the evidence contrary to the verdict is not so strong that the State
could not have met its burden of proof, and we accordingly hold that the evidence is
factually sufficient to support appellant’s conviction. See Pena, 251 S.W.3d at 609. 
          We overrule appellant’s third and fourth points of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Justices Jennings, Hanks, and Bland
Do not publish. Tex. R. App. P. 47.2(b).