

In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00232-CR

_____

ELVIS RAY WALKER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2008F00182

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

Elvis Ray Walker's Cass County jury trial for bail jumping[1] centered around his claim that he did not get notice of his arraignment hearing on an earlier charge of burglary and, therefore, failed to appear for that hearing. Convicted on the bail-jumping charge and sentenced to five years' confinement and a $5,000.00 fine, Walker urges on appeal, in four points of error,[2] that the evidence is legally and factually insufficient to show that his failure to appear was intentional or knowing and that the evidence is legally and factually insufficient to support the jury's rejection of his defense of reasonable excuse, that is, lack of notice. Because we find the evidence legally and factually sufficient to support both challenged aspects of the verdict, we affirm the judgment of the trial court.

A person commits the crime of bail jumping if he or she has been "lawfully released from custody, with or without bail, on condition that he subsequently appear" and then "intentionally or knowingly fails to appear in accordance with the terms of his release." TEX. PENAL CODE ANN. § 38.10(a) (Vernon 2003). "It is a defense to prosecution" for bail jumping "that the actor had a

---

[1] The grand jury's indictment alleged Walker

did then and there after being lawfully released from custody on pending felony . . . charge on condition that he subsequently appear in court, intentionally or knowingly fail to appear in accordance with the terms of his release, to wit: [photographic image of Walker's bail bond for his burglary charge] against the peace and dignity of the state.

[2] In his first and second points of error, Walker contends the evidence is legally and factually insufficient to support the conclusion that he intentionally or knowingly failed to appear. Walker's third and fourth points of error urge legal and factual insufficiency of the evidence relative to the rejection of his reasonable-excuse defense, which was based on his alleged lack of notice.

2

reasonable excuse for his failure to appear in accordance with the terms of his release." Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 38.10(c) (Vernon 2003). If the underlying offense for which the accused failed to appear is classified as any degree of felony offense, then this new charge is a third-degree felony. Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 38.10(f) (Vernon 2003). Otherwise, the new charge is a misdemeanor punishable by a fine only. Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 38.10(e) (Vernon 2003). Bail jumping is a result-of-conduct oriented offense because the crime is defined in terms of one's objective to produce a specific result. *See Roberts v. State*, 273 S.W.3d 322, 328–29 (Tex. Crim. App. 2008) (summarizing methodology used to classify crime as conduct oriented); *Gonzales v. State*, 270 S.W.3d 282, 288 (Tex. App.—Amarillo 2008, pet. ref'd) (same). The *mens rea* element of the offense modifies the conduct element of the offense, so it is the accused's conduct that must be done with the requisite "intentional" or "knowing" culpable mental state. *Cf. Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008) (discussing aggravated assault as result-oriented offense and noting, "The precise act or nature of conduct in this result-oriented offense is inconsequential. 'What matters is that the conduct (whatever it may be) is done with the required culpability to effect the result the Legislature has specified.'").

*Standards of Review*

"The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Young v. State*, 242 S.W.3d 192, 197 (Tex. App.—Tyler 2007, no pet.) (referencing *Jackson v. Virginia*, 443 U.S.

3

307, 320 (1979); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). In examining evidentiary sufficiency, we examine the evidence in the light most favorable to the verdict. *Jackson*, 443 U.S. at 320; *Johnson*, 871 S.W.2d at 186. "A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court." *Young*, 242 S.W.3d at 197 (referencing *Tibbs v. Florida*, 457 U.S. 31, 41–42 (1982)). Legal sufficiency is measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997).[3] In reviewing the legal sufficiency of evidence to support rejection of a defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

A factual sufficiency review requires us to assess all the evidence adduced at trial in a neutral light. *Grotti*, 273 S.W.3d at 280 (citing *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006)). We must then determine whether the jury was rationally justified in finding the accused guilty beyond a reasonable doubt. *Id.* (citing *Watson*, 204 S.W.3d at 426). "Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak

---

[3]The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.3d at 240; *see also Reese v. State*, 273 S.W.3d 344, 346 (Tex. App.—Texarkana 2008, no pet.) (citing *Grotti v. State*, 273 S.W.3d 273, 280–81 (Tex. Crim. App. 2008)).

that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust." *Id.* (citing *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15; *Johnson*, 23 S.W.3d at 11; and referencing *Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007)). To hold that the evidence is factually insufficient, we must be able to state objectively that the verdict is against the great weight and preponderance of the evidence. *Id.*; *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 417. Like a legal sufficiency review, a factual sufficiency review requires that the evidence be measured under the framework of the hypothetically correct jury charge. *Id.* at 280–81; *Wooley v. State*, 273 S.W.3d 260, 261 (Tex. Crim. App. 2008). A factual sufficiency challenge to a verdict implicitly rejecting a defense requires us to review all of the evidence in a neutral light and ask whether the State's evidence, if taken alone, is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 594–95 (Tex. Crim. App. 2003). Evidence that supports a verdict is not rendered insufficient merely because the defendant presented a different version of events or conflicting evidence. *Anderson v. State*, 701 S.W.2d 868 (Tex. Crim. App. 1985).

The hypothetically correct jury charge applicable in this bail-jumping case would require proof that Walker (1) had been lawfully released from custody with or without bail (2) on a felony charge (3) on the condition that he subsequently appear in court on that charge, and Walker thereafter

5

(4) intentionally or knowingly (5) failed to appear in court in accordance with the terms of that release. *See* TEX. PENAL CODE ANN. § 38.10(a), (f).[4] If, however, the jury affirmatively found that Walker had a reasonable excuse for not appearing in court in accordance with the terms of his release, then the jury would be required to acquit Walker. TEX. PENAL CODE ANN. § 38.10(c). The only elements of proof in issue here are the intentional or knowing aspect of the failure to appear and reasonable-excuse defense.

*The Evidence*

Walker was released from jail February 26, 2007, on a $5,000.00 bail bond under a pending charge of burglary. The bond was posted by Pam Huddleston, the owner of Tri-State Bail Bonds. Walker's bail bond did not list his next court date. The Cass County District Attorney's Office subsequently mailed to Walker and his bondsman the notices of Walker's arraignment setting, but Walker failed to appear.

Huddleston testified that, after she bailed Walker out of the Cass County Jail February 26, 2007, Walker never again contacted Huddleston. Huddleston received a notice in the mail from the Cass County District Attorney's Office some time after May 22, 2007, that Walker's burglary case was scheduled for an upcoming arraignment hearing. Huddleston then mailed a postcard notice of

---

[4]The indictment's allegation that Walker was released on a felony charge would be necessary to establish that the indicted offense was a felony rather than a misdemeanor, thereby invoking the district court's subject-matter jurisdiction. *See Kirkpatrick v. State*, 279 S.W.3d 324 (Tex. Crim. App. 2009). Thus, the applicable hypothetically correct jury charge—which must be authorized by the indictment—should also contain that subject-matter-jurisdiction-invoking element.

6

that arraignment hearing date to Walker and later spoke with Walker's aunt (Ophelia James), who confirmed that Walker had received the postcard and would soon contact Huddleston about the upcoming hearing.[5] Walker did not contact Huddleston. Walker also subsequently missed the arraignment hearing on his burglary charge. The postcard notice mailed by Huddleston to Walker was never returned as "undeliverable" to Huddleston by the post office. Huddleston mailed the postcard notice to Walker at what she understood to be his home address on Walker *Street* in Queen City, Texas.

The bail bond for Walker's felony burglary charge (admitted into evidence as State's Exhibit 1) bears Walker's signature and states that he is entering into an obligation (as a part of the bail contract) "to appear before the proper court of Cass County, Texas, *as he/she may be directed*."

Patricia Hollomon is a secretary with the Cass County District Attorney's Office. Her many responsibilities include the duty to schedule the felony arraignment dockets for the district court and to send notifications for those dockets to the interested parties. Hollomon testified she mailed a notice May 11, 2007, to Walker at his last known address (407 Walker *Street* in Queen City, Texas) informing him that his felony burglary case was scheduled for arraignment May 30, 2007, in the

---

[5]Walker did not object to this hearsay statement. *See* TEX. R. EVID. 801(a), 802. The jury was therefore permitted to consider this hearsay evidence for any purpose. *See Fernandez v. State*, 805 S.W.2d 451, 455–56 (Tex. Crim. App. 1991) ("Having failed to object, appellant must be prepared to accept the concept that hearsay could be considered by the trier of fact as probative evidence, to be assessed and weighed along with, and equal to, the other evidence admitted at trial."); *see also Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (hearsay evidence must be considered for its probative value in analyzing evidentiary sufficiency).

District Courtroom. The notice was also sent to Huddleston. Hollomon testified Walker did not appear for his May 30 arraignment hearing. Hollomon also told the jury that the notice she mailed to Walker was never returned as "undeliverable" by the post office, while other notices for this same arraignment docket did come back.

Bill Page works as the criminal investigator for the Cass County District Attorney. Page, a former Cass County Sheriff's Deputy, described the process of "booking in" someone to the Cass County Jail. Page also testified that he has known Walker since Page was a teenager and identified the accused in open court. According to Page, Walker lives with his mother in a house located on Walker *Lane* in Queen City, Texas. Page also reviewed Walker's book-in records for the underlying burglary charge; the sheriff's department's records indicated Walker, at the time of his arrest for that burglary, provided a mailing address that was for a house located on Walker *Lane* in Queen City.

Finally, Walker testified in his own defense. Walker acknowledged that he lived at a house located on Walker *Lane* in Queen City, Texas. Walker said he receives his mail at a post office box in that town, rather than receiving mail at his home. According to him, he had never received mail at the house during the entire time he had lived there. He also said there was not a mailbox located in front of that home. Walker admitted that he has been previously convicted of criminal conduct, including two felony convictions for which he had served two years' imprisonment.[6] He denied ever receiving notice of the arraignment hearing scheduled for May 30, 2007.

---

[6]One may impeach witness credibility with evidence of a conviction for felony or crime of moral turpitude. TEX. R. EVID. 609(a).

Walker also told the jury that the mailing address he gave his bondsman was for a post office box in Queen City. Walker, however, received nothing at his post office box from his bondsman or anyone else regarding the May 30 arraignment hearing for his burglary charge. Instead, he did not find out about the arraignment hearing until he received a telephone call from the district attorney's office following the arraignment date. On cross-examination, Walker agreed that, if James said to Huddleston that Walker had received notice of the May 30 arraignment hearing, that such a statement would likely be truthful. Walker also admitted he had failed to keep in touch with Huddleston (the bondsman) after being bailed out of jail.

*Analysis*

Assessing this evidentiary record against the challenged element of proof that Walker intentionally or knowingly failed to appear in court in accordance with the terms of his release on bail, we conclude that factually and legally sufficient evidence supports the jury's conclusion that Walker intentionally or knowingly failed to appear, because the jury heard testimony that two different parties mailed formal notices to the address where Walker lived (no evidence suggests that, in the small town of Queen City, Texas, mail addressed to 407 Walker *Street* would not be delivered to 407 Walker *Lane*); that none of those notices came back as "undeliverable"; that Walker's bail bondsman talked with his aunt, who in turn said Walker had received actual notice of the arraignment docket setting and would be subsequently contacting the bondsman before that hearing date. While Walker's testimony directly contradicts the inferences that may be drawn from the other

9

witnesses' testimony, such contradictions in the evidentiary record are best resolved by the jury. We overrule Walker's first and second issues.

We similarly conclude legally and factually sufficient evidence supports the jury's decision to reject Walker's defense of having a reasonable excuse for failing to appear. Walker's defense depended entirely on whether the jury found him to be a credible witness who was more believable than the State's witnesses. By its verdict, the jury chose to believe the State's witnesses rather than Walker. Because the jury is in the best position to evaluate witness demeanor and credibility, and because we cannot say the great weight and preponderance of the evidence requires us to conclude the jury reached an improper conclusion in rejecting his defense of reasonable excuse, we cannot say the evidence is legally and factually insufficient to support the jury's rejection of that defense. We overrule Walker's third and fourth points of error.

Finding no error in the proceedings below, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 17, 2009
Date Decided:       June 23, 2009

Publish

10